# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

BERTHA AQUINO-BUSTOS and
AURELIO PENALOZA-BRAVO,

        Defendants.

CRIMINAL ACTION FILE

NO. 1:18-CR-452-MHC-CCB

## ORDER

This action comes before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Christopher C. Bly [Doc. 67] recommending that Defendant Bertha Aquino-Bustos ("Aquino")'s Motion to Suppress Evidence Recovered From Her Cell Phone [Doc. 39] be denied as moot, that Aquino's Motion to Suppress Statements [Doc. 41] be denied, that Aquino's Amended Motion to Suppress Evidence Recovered From Her Cell Phone [Doc. 44] be denied, and that Defendant Aurelio Penaloza-Bravo's Motion to Suppress Statements [Doc. 50] be granted. The Order for Service of the R&R [Doc. 68] provided notice that, in accordance with 28 U.S.C. § 636(b)(1), the parties were authorized to file objections within fourteen (14) days of the receipt of that Order.

Within the time permitted, Aquino filed objections to the R&R ("Aquino's Objs.") [Doc. 69]. No other objections have been filed.

## I.    LEGAL STANDARD

In reviewing a Magistrate Judge's R&R, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). "Parties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusory, or general objections need not be considered by the district court." United States v. Schultz, 565 F.3d 1353, 1361 (11th Cir. 2009) (quoting Marsden v. Moore, 847 F.2d 1536, 1548 (11th Cir. 1988)). If there are no specific objections to factual findings made by the Magistrate Judge, there is no requirement that those findings be reviewed *de novo*. Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993) (citations omitted). Absent objection, the district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge," 28 U.S.C. § 636(b)(1), and may accept the recommendation if it is not clearly erroneous or contrary to the law. FED. R. CRIM. P. 59(a). In accordance with 28 U.S.C. § 636(b)(1) and Rule 59 of the Federal Rules of Criminal Procedure, the Court has conducted a *de novo* review of those portions of the R&R

to which Defendant Aquino objects and has reviewed the remainder of the R&R

for plain error.  See United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983).

## II.   DISCUSSION

Aquino makes the following specific objections[1] to the following findings

made by the Magistrate Judge in the R&R:

- That she was not in custody at the time of her interrogation (Aquino's Objs. at 1-5);

- That her statements were voluntary (Aquino's Objs. at 5-12);

- That her consent to search her cell phone was voluntary (Aquino's Objs. at 12-14);

---

[1] Aquino also "maintains all of her arguments raised below regarding the faulty search warrants and she continues to assert that all evidence seized from the phone should be suppressed." Aquino's Objs. at 20.  "[A] party does not state a valid objection to an R&R by merely incorporating by reference previous filings." Hammonds v. Jackson, No. 13-CV-711-MHS, 2015 WL 12866453, at *6 n.2 (N.D. Ga. May 18, 2015); see also Morrison v. Parker, 90 F. Supp. 2d 876, 878 (W.D. Mich. 2000) ("Plaintiffs' general, nonspecific objections, purporting to incorporate by reference their earlier brief, are tantamount to no objection at all and do not warrant further review.") (citations omitted).  Consequently, the Court does not consider Aquino's arguments made to the Magistrate Judge which are not in her objections to the R&R and do not challenge specific findings in the R&R.

- That any searches of her cell phone after her alleged consent did not exceed the scope of her consent (Aquino's Objs. at 14-15); and

- That the Government did not violate her Fifth Amendment rights by using her passcode (Aquino's Objs. at 15-18).

The Court will rule on these objections *seriatim*.

### A. Whether Aquino was in Custody at the Time of Her Interrogation

After receiving notification from United States Customs and Border Protection that it had intercepted a package that contained "lava lamp" kits which tested positive for the presence of methamphetamine, Special Agent James M. Ballard ("Ballard") of the United States Department of Homeland Security obtained an anticipatory search warrant for the intended destination of the package, which was 4389 Langdon Drive, Decatur, Georgia. Tr. of Suppression Proceedings (May 21, 2019) ("Tr.") [Doc. 54] at 13-14 & Gov't's Exs. 2, 3 [Doc. 72-1 at 1-21]. After the package was delivered on October 17, 2018, and the trip wire previously inserted in the package by agents was triggered to show that the package was opened, the search warrant was executed at approximately 5:38 p.m. Tr. at 65-66. There was no contact between federal agents and Aquino prior to 5:38 p.m. Id. at 66.

According to Aquino's testimony, not contradicted by the Government, uniformed law enforcement agents knocked on the door to her residence, she opened the door, they pointed guns and "started screaming at [her] to get out of the house." Id. at 101. Aquino was handcuffed and agents sat her down in the front yard for about thirty minutes, after which she was taken inside when, at some point, the handcuffs were removed. Id. at 101-102, 106, 119. The agents undertook a security sweep and began their search of the residence. Id. at 76-77. Ballard and a second agent then spoke to Aquino in the upstairs rear bedroom area of the house. Id. at 17. Ballard was wearing jeans and a shirt and was armed but no weapon was visible during the interview and Aquino was not handcuffed or restrained in any way. Id. at 17, 20. Aquino testified that she does not recall anyone telling her she was under arrest before the interview, nor was she physically threatened. Id. at 106-07.

Ballard recorded his interview with Aquino, although there may have been some discussion before the recording began.[2] Id. at 18, 108. Ballard testified that,

---

[2] Aquino testified that, before starting the recording, Ballard told her that he had the power to either let her go or arrest her and that it depended on if she would agree to cooperate. Id. at 102-103, 108. Ballard did not recall specifically saying this to Aquino, although he admitted that he tells most suspects prior to reading their Miranda rights that "[i]f you invoke your rights to a lawyer, we've got stop talking and I can't get your side of the story. . . . The phrase that I have the power

"We took her back – escorted her back to the room and started chatting and told her that we wanted to talk to her about what was going on here, and that before we ask her any questions or before she said anything we wanted to read her Miranda[3] rights and make sure that she understood her rights." Id. at 20. Ballard testified that Aquino was detained and was not free to leave the house. Id. at 48.

Ballard initially testified that he could not recall without looking at his report whether he asked Aquino about her immigration status before reading her Miranda rights off a card, but asked her if she understood English and she said she preferred English. Id. at 21-22. She orally waived her Miranda rights. Id. at 22-23. Ballard later recalled asking Aquino immigration questions for "four or five minutes" at the beginning of her interview. Id. at 42, 46-47. The recorded conversation in fact reveals that, prior to advising Aquino of her Miranda rights, Ballard asked her biographical questions and questions about how she entered the United States for slightly over four minutes. Gov't Ex. 1; see also Tr. of Interview ("Interview Tr.") [Doc. 74-1 at 3-28] at 1-3. Following these initial immigration/background questions, the following colloquy occurred:

---

to put you in jail or lock you up is not something that I can recall ever using." Id. at 128-129.

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

BALLARD: Now. Do you prefer to answer . . . speaking questions in English or Spanish?

AQUINO: Uh, either one, I don't mind, if you know English . . .

BALLARD: You tell me, I'm reading from a card, so whatever you prefer or understand.

AQUINO: Oh, you can do English. I understand.

BALLARD: Alright, so this is advisement and waiver of Miranda rights, ok? So before I ask you any questions, I want to explain your rights to you.

AQUINO: Mhm.

BALLARD: You have the right to remain silent, anything you say can be used against you in a court of law, you have the right to consult with a lawyer before questioning and to have a lawyer present during questioning. If you cannot afford a lawyer, one will be appointed to represent you free of charge prior to any questioning. Do you understand these rights?

AQUINO: Mhm.

BALLARD: Now, are you willing to waive these rights and talk to me now without a lawyer being present?

AQUINO: I can talk to you, mhm.

Interview Tr. at 3; see also Tr. at 104, 110, 112 (Aquino testifying that Ballard read Miranda rights to her, that she has a high school education and fully understands English, and she understood those rights and his questions). Ballard testified that the interview lasted 45 minutes to an hour, although that actual recorded

7

conversation lasts about 39 minutes. Tr. at 22; Gov't Ex. 1. At some point after the conclusion of the interview, Aquino was again handcuffed, taken to a patrol car, and arrested. Tr. at 107-108, 120.

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court in <u>Miranda</u> "established that custodial interrogation cannot occur before a suspect is warned of [his] rights against self-incrimination." <u>United States v. Newsome</u>, 475 F.3d 1221, 1224 (11th Cir. 2007). Pre-custodial questioning, in contrast, does not require <u>Miranda</u> warnings. <u>United States v. Street</u>, 472 F.3d 1298, 1309 (11th Cir. 2006).

The defendant bears the burden of establishing that she was in custody for purposes of <u>Miranda</u>. <u>United States v. de la Fuente</u>, 548 F.2d 528, 533 (5th Cir. 1978) (holding that "if a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination.").[4] An individual is considered to be "in custody" for <u>Miranda</u> purposes when there is

---

[4] In <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

either a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Brown, 441 F.3d 1330, 1347 (11th Cir. 2006) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)). An interviewee's "status as a suspect, and the 'coercive environment' that exists in virtually every interview by a police officer of a crime suspect, [does] not automatically create a custodial situation." United States v. Muegge, 225 F.3d 1267, 1270 (11th Cir. 2000); see also United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession.") (citation omitted). Instead, courts must consider on a case-by-case basis whether, under the totality of the circumstances, an objectively reasonable person would have felt free to leave the scene. Brown, 441 F.3d at 1347.

Factors relevant to this analysis include "whether the officers brandished weapons, touched the suspect, or used language or a tone that indicated that compliance with the officers could be compelled." United States v. Luna-Encinas, 603 F.3d 876, 881 (11th Cir. 2010) (citation and quotation marks omitted). Another "powerful factor" is whether officers "[u]nambiguously advis[e]" the interviewee "that he is free to leave and is not in custody." Brown, 441 F.3d at

1347. An additional factor to consider is whether the interviewee is released at the end of the interview. Howes v. Fields, 565 U.S. 499, 509 (2012) (citing Beheler, 463 U.S. at 1122-23). And, while the location of the interview is "not dispositive," courts are less inclined to find a custodial encounter "when the interrogation occurs in familiar or at least neutral surroundings." Brown, 441 U.S. at 1348 (citation and quotation marks omitted). The custody inquiry presumes an objectively reasonable interviewee—"the actual, subjective beliefs of the defendant and the interviewing officer on whether the defendant was free to leave are irrelevant." Id. at 1347 (citation omitted). In considering whether there has been a restraint on freedom of movement, "[n]o particular fact in the 'custody' analysis is outcome determinative – [the court] simply weigh[s] the totality of the circumstances." Id. at 1349.

Although he concluded that Aquino was detained and not free to leave, and therefore seized by federal agents, the Magistrate Judge found that she was not in custody during her interrogation. R&R at 14-15. The Magistrate Judge's finding is based on the following facts: (1) the interview occurred in the bedroom of Aquino's residence, (2) the interview was relatively short in duration, (3) Aquino was not physically restrained during questioning, (4) there were no visible weapons during the interview, and (5) the agents' tone was not threatening. R&R at 15-17. Aquino argues that there are other factors that should have compelled the

Magistrate Judge to find that she was in custody, including the fact that guns previously were brandished, she was handcuffed for a period of time prior to her interview, and she was not free to leave the residence during questioning. Aquino's Objs. at 3-5.

As an initial matter, because this Court finds that Aquino was properly advised of her Miranda rights after the initial four minutes of background questions by Ballard, it does not matter whether she was in custody from that point forward. The question of whether Aquino was in custody at the time of the pre-Miranda background/immigration discussion with Ballard is the only relevant inquiry.

After reviewing the totality of the circumstances, this Court finds that Aquino was not in custody at the time of Ballard's interview. It is important to note that the question of whether one is in custody is not viewed from the perspective of the individual suspect or law enforcement officer involved in the interrogation. So, the fact that Ballard testified that Aquino was not free to leave the scene is not determinative of the analysis, although the fact that Aquino was not expressly told she was free to leave is a factor to be considered.[5] The record

---

[5] Moreover, the Eleventh Circuit has stated that the "free to leave" test applies to determine whether a suspect has been "seized" under the Fourth Amendment, but not whether she is in "custody" for the purposes of Miranda. The Fourth Amendment seizure analysis uses the "free to leave" test: a person is "seized" when "a reasonable person would [not] feel free to terminate the encounter" with

indicates that Ballard was polite and professional when interviewing Aquino, and the exchanges between the two were not threatening nor intimidating. The entire encounter lasted about forty minutes. The interview was conducted in Aquino's residence by agents whose firearms remained hidden under their garments until the interview was complete. Aquino was never touched during the questioning or told she was under arrest. Aquino never asked for a break, refused to answer a question, or attempted to leave. The fact that Aquino was placed under arrest shortly after the conclusion of the interview is but one factor supporting an inference of custody, however, the totality of all the facts indicates otherwise.[6] A reasonably innocent person in Aquino's situation would not have felt a "restraint on [her] freedom of movement of the degree associated with a formal arrest." Muegge, 225 F.3d at 1270 (quotation marks and citation omitted).

---

the police. By contrast, a person is in "custody" for Miranda purposes only when there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." United States v. Street, 472 F.3d 1298, 1309 (11th Cir. 2006) (citations and quotation marks omitted).

[6] Aquino makes much of the fact that she initially was handcuffed outside the residence; however, the Eleventh Circuit frequently has held that such initial action does not constitute a custodial arrest for Miranda purposes. See United States v. Blackman, 66 F.3d 1572, 1576 (11th Cir. 1995) (concluding that the fact that bank robbery suspects were ordered out of their residence, at gun point, and temporarily handcuffed did not convert investigatory stop into arrest requiring Miranda warnings) (citing cases).

Accordingly, the Court finds that Aquino was not in custody at the time of her interview with Ballard, so any statements to Ballard that were made prior to Miranda warnings being given are not subject to suppression.

## B.     Whether Aquino's Statements Were Voluntary

Regardless of whether Aquino was in custody when making the challenged statements, the statements may still be inadmissible if they were involuntary. See United States v. Lall, 607 F.3d 1277, 1285 (11th Cir. 2010) ("Even if [the defendant] was not in custody in the technical sense (and thus Miranda warnings were not required), we would still be required to address the voluntariness of his confession.").[7]  A confession is involuntary, and thus inadmissible, "only when the [totality of] the circumstances show that 'coercive police activity' overcame the defendant's free will." Arvelo v. Sec'y Fla. Dept. of Corrs., 687 F. App'x 901 (11th Cir. 2017) (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)).  In determining voluntariness, the Court must assess "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) (indicating that the Court should consider the defendant's intelligence, the length

---

[7] In fact, as stated previously, Miranda warnings actually were given to Aquino after she responded to Ballard's background questions.

of detention, the nature of the interrogation, any use of physical force, and the issuance of promises or inducements).

> We focus our voluntariness inquiry on whether the defendant was coerced by the government into making the statement: The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. The district court must consider the totality of the circumstances in assessing whether police conduct was causally related to the confession. Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession. Government coercion is a necessary predicate to a finding of involuntariness under the Fifth Amendment. Absent police conduct causally related to the confession, there is . . . no basis for concluding that any state actor has deprived a criminal defendant of due process of law.

United States v. Thompson, 422 F.3d 1285, 1295-96 (11th Cir. 2005) (internal citations and quotation marks omitted). See also Connelly, 479 U.S. at 163 n.1 (noting that coercive conduct normally involves an exhaustively long interrogation, the use of physical force, or the making of a promise to induce a confession). Ultimately, the Court must determine "whether a statement was made freely or whether the defendant's 'will has been overborne and his capacity for self-determination has been critically impaired.'" Devier v. Zant, 3 F.3d 1445, 1455-56 (11th Cir. 1993) (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

In this case, the Court finds that Aquino's statements made to Ballard prior to the reading of her Miranda rights and her subsequent waiver of those rights were

voluntary. There was no intimidation, coercion, or deception by the agents. Aquino made her statements in her own residence so that she was not intimidated by her surroundings. Aquino was not physically restrained and the <u>Miranda</u> warnings read to her were an accurate description of those rights. The interview was relatively short in duration.

Aquino insists that Ballard informed her that if she cooperated she could avoid going to jail, was threatened about her immigration status, and that the Magistrate Judge should have credited her testimony over that of Agent Ballard. Aquino's Objs. at 5-7. As an initial matter, a district court is not required to rehear witness testimony when accepting a magistrate judge's credibility findings. <u>United States v. Raddatz</u>, 447 U.S. 667, 680-81 (1980); <u>United States v. Thompson</u>, 422 F.3d 1285, 1297 (11th Cir. 2008). "[I]n evaluating the factual version of events between the law enforcement officer[ ] and [the defendant], we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be 'unbelievable.'" <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 749 (11th Cir. 2002) (citing <u>United States v. Rivera</u>, 775 F.2d 1559, 1561 (11th Cir. 1985)); <u>see also</u> <u>United States v. Emanuel</u>, 440 F. App'x 881, 883 (11th Cir. 2011) (according "substantial deference" to the credibility determinations made by the magistrate judge where the defendant "failed to show that the magistrate [judge]'s

understanding of the facts is not plausible or permissible . . . .").  This is not one of

those "rare cases" in which the transcript of the evidentiary hearing presents a basis

for rejecting the Magistrate Judge's resolution of credibility.  United States v.

Marshall, 609 F.2d 152, 155 (5th Cir. 1980); see also United States v. Cofield, 272

F.3d 1303, 1306 (11th Cir. 2001) ("This is not the 'rare case' discussed in

Marshall, as the transcript here provides no basis to reject the magistrate judge's

credibility findings.").

This Court finds no reason to reject the Magistrate Judge's credibility

finding in this case:

> Defendant makes much of the conversation that she says occurred
> before the recording started.  She says that Agent Ballard told her that
> he had the power to either let her go or arrest her, and that it all
> depended on whether she wanted to cooperate.  Agent Ballard testified
> that he could not remember if he had a conversation with Defendant
> prior to the recovered one, but that he typically tells interviewees that
> their "chance to talk is before you are Mirandized—before you ask for
> a lawyer because once you get a lawyer, it stops."  He testified that the
> phrase "that I have the power to put you in jail or lock you up is not
> something that I can recall ever using" and that he found such an
> accusation "extremely offensive."  The Court finds Ballard's testimony
> more credible.  The undersigned watched him while he testified, and he
> appeared to be telling the truth when he said that he had never used the
> phrase that Defendant attributed to him; he appeared truly offended
> when he said that the accusation was offensive.  Moreover, the Court
> finds that Agent Ballard has no reason to lie, while Defendant has a
> decided interest in the outcome of this litigation.

R&R at 22 (citations omitted).

Aquino places great reliance on Magistrate Judge Vineyard's report

and recommendation in United States v. Arroyo-Garcia, No. 1:12-CR-0357-

WBH, 2014 WL 1309078 (N.D. Ga. Mar. 31, 2014), adopting R&R issued

Feb. 6, 2014, which she contends should mandate that all of her responses to

Ballard's pre-Miranda questions should be suppressed. Aquino's Objs. at 8-

9. However, there is a critical distinction between Arroyo-Garcia and the

instant case, because in Arroyo-Garcia the defendant first had been arrested,

the interview between Ballard and the defendant was conducted at the Cobb

County jail through a glass partition, and the defendant clearly was in

custody. Id., 2014 WL 1309078, at *2-3. "Because Arroyo-Garcia was

subjected to custodial interrogation before he was advised of his Miranda

rights, it is recommended that Arroyo-Garcia's motion to suppress his pre-

Miranda statements be granted." Id. at *8.

Moreover, even assuming Ballard discussed the possibility that

Aquino could be arrested or let go depending upon her cooperation, that

would not alone make the interview coercive. See United States v. Quinn,

123 F.3d 1415, 1423-24 (11th Cir. 1997) (finding that police did not

improperly induce the defendant's confession by telling him that "he was

facing a 40-year sentence but might receive a more favorable sentence if he

cooperated" and that "it would be difficult to cooperate once an attorney had been appointed."); United States v. Nash, 910 F.2d 749, 752 (11th Cir. 1990) (finding that telling the defendant "that cooperating defendants generally 'fared better time-wise'" did not amount to illegal inducement); United States v. Davidson, 768 F.2d 1266, 1271 (11th Cir. 1985) (finding that law enforcement assurance that "the accused's cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render a subsequent incriminating statement involuntary"); United States v. Ballard, 586 F.2d 1060, 1063 (11th Cir. 1978) ("telling the [defendant] in a noncoercive manner of the realistically expected penalties and encouraging [her] to tell the truth is no more than affording [her] the chance to make an informed decision with respect to [her] cooperation with the government.").

### C. Whether Aquino's Consent to Search Her Cell Phone Was Voluntary

About four minutes after advising Aquino of her Miranda rights and Aquino waiving those rights, Ballard asked Aquino if she would be willing to allow a search of her phone, and Aquino said yes. Gov't's Ex. 1; Interview Tr. at 7. About twenty minutes later, Ballard again asked Aquino if she agreed to a search of her cell phone, and she again agreed and provided her passcode for access.

Gov't's Ex. 1; Interview Tr. at 20-1. Aquino contends that the Magistrate Judge's finding that her consent was voluntary was error for much of the same reasons as she contends that her statements were involuntary. Aquino's Objs. at 12-14.

The Fourth Amendment of the United States Constitution protects an individual's right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. "One of the well-established exceptions to the probable cause and warrant requirements is a search which is conducted pursuant to voluntary consent." United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989) (citations omitted). "[W]here the validity of a search rests on consent, the [government] has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." United States v. Tovar–Rico, 61 F.3d 1529, 1536 (11th Cir. 1995) (internal marks and citation omitted). "In order for consent to a search to be deemed voluntary, it must be the product of an essentially free and unconstrained choice." Id. (quoting Garcia, 890 F.2d at 360). Furthermore, "[t]he voluntariness of the consent must be judged in the light of the totality of the circumstances." Id. at 1535 (citing Schneckloth, 412 U.S. at 227); see also Ramirez–Chilel, 289 F.3d at 752 (internal punctuation and citation omitted) ("In determining the voluntariness of a defendant's consent, . . . a court

must look at several factors, which include whether the defendant was free to leave, whether there was coercive police procedure, the extent of the defendant's cooperation or awareness of a right to refuse to consent, whether the defendant could refuse to consent, the extent of the defendant's education and intelligence, and the defendant's belief that no incriminating evidence would be found.").

This Court agrees with the Magistrate Judge's finding that Aquino's consent to search her cell phone was voluntary. Once again, Aquino freely gave her permission to search and provided her passcode for Ballard to access her phone. As with her other statements made during the interview, Aquino was not physically restrained, there were no threats or coercion, the consent occurred in her own home, and she was competent to offer consent. Although Aquino was not informed of her right to refuse consent, Ballard was not required to do so. Schneckloth, 412 U.S. at 249 ("while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.").

### D. Whether Subsequent Searches Exceeded the Scope of Aquino's Consent

Consensual searches are limited to the terms of their authorization. United States v. Susini, 261 F. App'x 270, 273 (11th Cir. 2008) (citing United States v. Rackley, 742 F.2d 1266, 1270-71 (11th Cir. 1984)). "When an individual gives a

general statement of consent without express limitations, the scope of a permissible search is not limitless." United States v. Martinez, 949 F.2d 1117, 1119 (11th Cir. 1992) (citation and quotation omitted). The search will still be constrained by the bounds of reasonableness, specifically what the officer could reasonably interpret the consent to encompass. Id.; see also Florida v. Jimeno, 500 U.S. 248, 251 (1991) (citations omitted) ("The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?"). "To ascertain what conduct is within the 'bounds of reasonableness,' we must consider what the parties knew to be the object (or objects) of the search." United States v. Zapata, 180 F.3d 1237, 1242 (11th Cir. 1999). "The person who gave consent can also limit the scope of a search as it is occurring, or request that it be discontinued." United States v. Garcia, 284 F. App'x 791, 795 (11th Cir. 2008) (citing United States v. Harris, 928 F.2d 1113, 1117-18 (11th Cir. 1991)).

Aquino asserts that her consent was not to "repeated, hours' long searches of her phone or the copying of all her files" found therein. Aquino's Objs. at 15. Although Aquino originally consented to the search of her cell phone "to verify there's no message . . . no text or phone calls" concerning the package, Ballard

21

then had additional discussion with Aquino concerning her culpability with respect

to the illegal drugs, so that the second time he asked for consent it was clear that

the reason he was interested in searching her phone was for evidence related to

illegal drugs.

> BALLARD: OK, so we have your cell phone here, it's a white iPhone with a little blue ring thing on the back, I don't know what that's for, but it's kind of weird looking, so, um, and you've already said that . . . you're saying we can search your phone, make sure there's nothing in there makes you culpable of anything here and no message about the package, right?

> AQUINO:  Mhm.

> BALLARD: Cool.

> AQUINO: No, nothing about the messages.

> BALLARD: And how do I . . .

> AQUINO: 5-5 . . .

> BALLARD: Wait, how do you, oh how do you . . .

> AQUINO: You just swipe up . . .yeah, no, just press on the button, press on the middle.

> BALLARD: Oh, sorry.  I don't have an iPhone, I have an iPhone but it's different.

> AQUINO: Oh, 5-5-0-6.

Doc. 74-1 at 22 (emphasis added).

There was no limitation as to time or content placed on Aquino's consent to search her phone, nor was there any point in the interview where Aquino withdrew her consent to search.  Consequently, because a reasonable officer would have understood Aquino's consent to be unlimited with respect to the search of her cell phone, its contents was legitimately accessed.

### E.    Whether Aquino's Fifth Amendment Rights Were Violated by Using Her Phone Passcode

Aquino continues to maintain that her Fifth Amendment rights were violated by agents obtaining and then using her cell phone passcode.  Aquino's Objs. at 15-18.  As is evident from the above-quoted exchange, Aquino actually provided Ballard with the passcode without a specific request, as she in fact saw he was struggling to access her phone and she voluntarily provided him with the passcode to unlock it.  The statements that included her passcode were made after Miranda warnings were given and were not the result of any coercive tactic.  Aquino was not compelled to provide the passcode in violation of her Fifth Amendment rights.

Aquino's reliance upon United States v. Sanchez, 334 F. Supp. 3d 1284 (N.D. Ga. 2018) is misplaced.  Aquino's Objs. at 17-18.  In Sanchez, a state parole officer who believed the defendant, a parolee, may have been involved in drug trafficking asked him for the passcodes to two iPhones, and the defendant said on two occasions, "I'm not going to give you the passcode." Id. at 1291.  The

23

defendant was then placed in handcuffs and the officer requested a warrant for his arrest. Id. The officer later told the defendant that a parole warrant had been issued for his arrest based on the failure to follow instructions of the officer, did not advise the defendant of his Miranda rights, and the defendant provided the passcode shortly thereafter. Id. at 1291-92. The court found that the defendant's production of his cell phone passcode was compulsory within the meaning of the Fifth Amendment: "The record shows that Defendant only gave Officer Jerram the iPhone passcodes after he repeatedly refused to do so, Jerram threatened him with arrest for a parole violation if he failed to do so, and he then arrested Defendant for his refusal." Id. at 1294.

Unlike in Sanchez, in this case Aquino was not under arrest, was in fact provided Miranda warnings and waived them, voluntarily consented to a search of her phone, and offered to provide her passcode voluntarily. The Magistrate Judge was correct in determining there was no Fifth Amendment violation.

## III. CONCLUSION

Accordingly, after a *de novo* review of those portions of the R&R to which Aquino objects, the Court **OVERRULES** her objections [Doc. 69]. Finding no clear error in the remaining portions of the R&R, the Court **ADOPTS** the R&R [Doc. 67] as the Opinion and Order of the Court.

It is hereby **ORDERED** that Defendant Bertha Aquino-Bustos's Motion to Suppress Evidence Recovered From Her Cell Phone [Doc. 39] is **DENIED AS MOOT**, that her Motion to Suppress Statements [Doc. 41] is **DENIED**, that her Amended Motion to Suppress Evidence Recovered From Her Cell Phone [Doc. 44] is **DENIED**, and that Defendant Aurelio Penaloza-Bravo's Motion to Suppress Statements [Doc. 50] is **GRANTED**.

It is further **ORDERED** that the time between the date the Magistrate Judge certified Defendants ready for trial on November 21, 2019, and the issuance of this Order, shall be excluded in calculating the date on which the trial of this case must commence under the Speedy Trial Act because the Court finds that the delay is for good cause, and the interests of justice in considering Defendant Aquino's objections to the R&R outweigh the right of the public and the right of the defendant to a speedy trial, pursuant to 18 U.S.C. § 3161, *et seq*.

**IT IS SO ORDERED** this 7ᵗʰ day of January, 2020.

_____
MARK H. COHEN
United States District Judge